Good morning, and may it please the Court, I'm Amy Saharia of Williams & Connolly for Petitioners. I will attempt to reserve two minutes for rebuttal. Petitioners are a family of evangelical Christians from El Salvador who indisputably have a well-founded fear of persecution at the hands of the MS-13 gang. Their petition should be granted because their well-founded fear is on account of three independent protected grounds. First, their religion. Second, their membership in a particular social group of their nuclear family. And third, their membership in a particular social group of evangelical Christians at King's Castle Church who preach and proselytize to gang members and youth. Counsel, I want to get directly to the issue in your part of the case that is of concern to me. The agency, among other things, found that there was no nexus to a protected ground, assuming that all of these grounds are exhausted and actually protected grounds and so forth and so on. And it seemed to me that there was evidence to support that in the sense that some of the early run-ins with the gang had to do with things like a family member not wanting to hide a weapon for the gang and another family member not wanting to be the girlfriend of a gang member and things that really had no relationship to the protected grounds. Why isn't that a permissible finding on this record? It is true that there are some early incidents of harassment or threats that may not have a direct relationship to the protected grounds that are at issue here. But our key argument is that after the Mercados joined the King's Castle Church in 2005, the threats that were directed against them were on account of protected grounds, both their religion and their family membership, and more fundamentally, it's their well-founded fear of future persecution that is on account of protected grounds. The Board's ruling in this case, when it discussed nexus, looked only backwards. There is no discussion in the Board's ruling of Petitioner's well-founded fear of future persecution. Well, it matters to look at the past because it changes the presumption. If there is no past persecution on account of a protected ground, then there's no presumption of well-founded fear of future. So they have to, as a matter of doctrine, look first at whether there was past persecution because it changes the burden. Well, the IJ's ruling in this case was that there was no past persecution but that there was independently a well-founded fear of future persecution that was established independently of past persecution. Right, but they do have to look at both, I guess. I agree that the Board certainly was correct to look at what happened in the past, but the Board also had to consider the objective evidence of the reasons for their well-founded fear of future persecution. The other question I wanted to ask you has to do with the perspective, whether you're looking for the motivation of the persecutor or you're looking for the motivation of the petitioner. And here's an example. Let's suppose a group of priests feel compelled by their religion to feed the poor, and so they start a program to feed the poor. And they're persecuted because they're feeding the poor, because somebody doesn't want them to do that. And so their motivation is religious, but does that necessarily make the persecutor's motive religious? So, in other words, even if they are motivated in their anti-gang activities by their religious faith, does that mean that resentment of their anti-gang activities is also resentment of their religious motivation? In this case, I believe that it does, and that's because their anti-gang activity was not secular in nature. It was not like just feeding the poor or just helping orphans in the community. The evidence in this record is clear that their anti-gang activities were the public expression of faith. For example, Danny and Susie Mercado put on spectacles for youth in the community to draw youth into the church, and the record shows that those spectacles were religious. They told Bible stories. They sang songs about God. And Mr. Mercado directly preached and proselytized both to people in the community and directly to gang members, including the gang member that entered his property and threatened him with a machete because he was an evangelical. So this is not a case where the Mercados engaged in secular activity that may have been motivated by religious beliefs. The activity that drew the gang's attention was the expression of faith. It was the public expression of religion. And the board's ruling, I think, fundamentally ignores that fact. The board said in its decision that there was little evidence connecting the gang's actions against the Mercados with their religious beliefs other than their anti-gang activity. I think there's only two ways to read that sentence. One is that the board believed the anti-gang activity was not religious in nature, and that finding is not supported by substantial evidence. As I just recited, the evidence is clear that it was religious in nature. I think the second possible reading of that sentence is that the board seemed to think that any ass- This goes to Judge Graber's question. Let's suppose that the Mercados had neighbors and that they decided to join forces and conduct an anti-gang, an anti-MS-13 campaign in their neighborhood. And the Mercados were motivated by their religion, and the other side was perfectly secular. Does that mean the Mercados get asylum but the other side does not if the gang resists? There are cases that stand for the proposition that even if there is a secular activity that is motivated by religious beliefs and persecutors persecute that, that secular activity, that is persecution on account of religion. So in answer to my question, your question is, yes, the Mercados get asylum and the neighbor does not. Yes, but I don't think that that is the case. What's your best case for that proposition that a persecutor's distaste for a secular activity- I know you say it's not secular in this case, but what's your best case for the proposition? I think the best case is the In Re S A case from the board, which involved a situation where a Muslim daughter was engaging in secular activity like wearing clothes or talking to boys on the street that were motivated by her view of what it means to be a Muslim, and her father disagreed with her engaging in those secular activities because of his view of what it means to be a Muslim, and the board held that that was persecution on account of religion. But as I said, I think our more fundamental point in this case is that the Mercados' anti-gang activities were religious in nature. They were not secular activities motivated by- Were they trying- this is what sort of troubled me. Were they trying to proselytize these young people? Yes, absolutely. I mean, their anti-gang activity was proselytizing. The mission of King's Castle Church is to proselytize, to draw El Salvador's youth into the church. And in your view, what did the board do with that? I read the board's opinion to hold that that- to find that that activity is not religious in nature. But they also held there was no nexus, which is they're independent reasons for rejecting the claim. And so it seems to me that that goes back to my initial question as to whether that separate finding was supportable. I don't believe it is. I would add it's unclear to me whether you can separate the board's incorrect view of the Mercados' anti-gang activity from its nexus finding because its nexus finding follows from that incorrect finding. But even putting that aside, I think substantial evidence does not support the board's nexus finding. In particular, the board did not mention at all the compelling testimony of Dr. Vanden, the Mercados expert, about the reasons why they would have a well-founded fear of persecution were they to return to El Salvador. Counsel, they've got- it looks to me like they have a pretty well-founded fear of persecution by gang members. That's not persecution by the government. And usually you've got- if that's the case, then you're going to have to show that the government is unwilling or incapable of doing so. That's correct. The only evidence here, and we know generally that El Salvador has been a very, very difficult area, but we also know generally that the government is trying to take some anti-gang efforts there. Some of them are successful, some are not. The only piece of evidence we do have about the police is that she did contact the police after she received the death threat, and the police were generally cooperative. They tried to get her to participate in a sting operation to get the perpetrators, and she declined to participate. That doesn't exactly demonstrate that the Salvadoran authorities are unwilling to try to address the problem. The IJ actually found in her ruling, this is at page 27 of the appendix, that the government is unable to control the gangs in El Salvador. And at page 29 of the appendix, the IJ ruled specifically as to the religion claim that the only issue was nexus and that but for nexus, petitioners would be eligible for asylum. We believe this amounts to a finding that the government was unable or is unable to control the gangs. The government did not challenge that ruling, and the government has not raised that issue before this Court as a reason for a remand for further proceedings. Well, that's because it's not in the BIA's decision. Aren't we just reviewing the BIA's decision? Yes, that's correct, but the government didn't challenge that ruling of the IJ before the board. The board had no reason to pass on it. I don't think it's necessary to remand for the board to consider that particular element of the refugee definition when the government didn't even challenge that before the board. If I may briefly address the petitioner's family claim, the evidence also compels the conclusion that the petitioners have a well-founded fear of persecution on account of their membership and their nuclear family. As this Court and many other courts have held, a nuclear family is a prototypical example of a social group. The government concedes that point, and it's brief. It doesn't challenge that this particular family is a social group. And I think the evidence compels the conclusion that their family is at least one central reason for their fear of future persecution. Both Danny and Dr. Vanden testify that gangs in El Salvador target families as families. Dr. Vanden testified that there is a consistent and documented pattern of gangs engaging in increasingly violent retribution towards families. And the Mercados were highly visible in their community. Their home was in a prominent location. They were active and proselytizing in the community. And Dr. Vanden said that the people in the whole neighborhood know who they are. It's worth noting that Dr. Vanden actually traveled to El Salvador and visited the Mercados neighborhood. He met with neighbors. He met with their pastors. Moreover, when the gangs issued the final series of death threats against the Mercados, they threatened the entire family. And they indicated that they had been tracking the movements of the individual family members. This was a threat against the family. And Dr. Vanden testified that MS-13 has very clearly targeted the Mercado family and that if they were to return to El Salvador and reengage in their public proselytizing as a family, they would be targeted again by MS-13. If I may, I'd like to reserve the remainder of my time for rebuttal. Do that. Thank you. We'll hear from Ms. Carmichael. Amy Carmichael for the government. May it please the Court. Could you raise the microphone so we can hear you? Thank you. Petitioners ask this Court to review the Board's denial of their applications for asylum withholding of removal and cap protection. Contrary to the Petitioner's arguments, the record does not compel the conclusion that they have a well-founded fear of persecution on account of the protected ground. While the statute permits the persecutors to have multiple motives, the Petitioners must still demonstrate that the protected ground standing alone was sufficient motivation to cause their persecutors to act, and they have not done so. Rather, the Petitioners try to string together unrelated events that each of them experienced at the hands of a variety of gang members over the course of four years. Counsel, this seems like one of those classic cases where the finder of fact could go either way, because certainly this is a religiously motivated and religious content opposition to gangs, but there were also lots of other incidents that seemed to bear no relationship to that fact. So, you know, what do we do with that? Is it all about the standard of review? Because certainly one could come to the conclusion on this record that religion was a central reason for being targeted by these gangs. I do think that the standard of review is very important in this instance, because the Court reviews the question of nexus for substantial evidence. So it's insufficient that this Court may have in the first instance come to a different conclusion than the agency did. Instead, the record has to compel the contrary conclusion that no fact finder could have come to the result that the agency did. And I don't think that this record compels the conclusion that there was a nexus between any of the grounds that the Petitioners assert and the incidents that they experienced. In fact, the Petitioners testified to the reasons that each of these incidents occurred, and virtually all of them are purely criminal acts. The most serious incident was that of the extortion that led them to flee the country in March 2006. In each of these, the phone calls that Mrs. Mercado testified to, the perpetrators demanded $5,000 and threatened to harm the family, to harm the children if that money was not paid. Mrs. Mercado testified that she attempted to tell the gang members about Jesus, but that they didn't care about that because all they wanted was the money. When you look at the record as a whole, although the Petitioners, it's clear that the Petitioners are active in their church and that they do participate in the community and activities that the gangs may view as being contrary to the gangs themselves, that that wasn't the motivating factor for any of these incidents. Instead, they stole tires off of a truck because the truck was in good condition and the tires are valuable. They put the daughter Susie on a death list because she refused to date a gang member. The interactions with Danny, the son, were based primarily on the fact that he was a young man who was not involved in gangs. He was approached while he played soccer. And there's no – there's just no relationship between the things that happened and the protected grounds that they assert. What do we do with the family claim? If at some point MS-13 has decided that the Mercados are not cooperative and that they're disruptive, and they're disruptive in part because of their religion and they're disruptive in part because they're good citizens, and so they've got sort of mixed motives on the question of religion versus economics. But they've now said the Mercados are just trouble for us. What do we do with that? The evidence of record doesn't really support that conclusion. The other thing is that in most of the cases where a family is treated as a particular social group for the purposes of asylum, what those cases look like is it's because you're related to a person that we're after that we're also after you. But that isn't – I don't read that as a requirement of those cases. That's kind of how they arise. But let's say the gang were to decide that – not this family necessarily, but there are two families in town that they would just like to run out of town because they totally hate those families and they're going to just kill them off. And that's because they are members of that family. What do we – what is the result in a case like that? I think the trouble, though, is that there's not evidence of that in this case. Well, that's not really an answer to my question. It's sort of a two-part question. Would that suffice if proved? And secondly, does the record compel such a conclusion here? It's possible that the agency may find that that sufficed. But they did not find that it sufficed here. And here, there's not evidence of that. Rather, the evidence suggests that they were targeted because they have a prominent house and they run a store and they're perceived to have money. And that's partly because they run a store, and that's partly because they have a truck that the gang viewed to be quite valuable. What do you do with the evidence that opposing counsel discussed, that the expert said that this family is targeted as a family? Well, there's a couple of things. First of all, the expert, Dr. Vanden, testified that he was vaguely familiar with their claims, but he wasn't familiar with what precisely happened to this family. And the question of nexus on this record is about the particulars of their case, not sort of the broad strokes in which Dr. Vanden was testifying. He testified that it is possible that the gangs may target somebody because of a variety of things, including their religious beliefs and their religious activities, but that's not determinative to the question of whether in this case these Petitioners were targeted because of that. And the Petitioners themselves offered testimony to the contrary, indicating that they were targeted because they came into contact with gang members by virtue of living in the neighborhood where they lived, which is also supported by Dr. Vanden's testimony, and that they, the gangs were motivated primarily for financial reasons. So I don't think that it's particularly problematic that the Board didn't find that, though, did it? Well, the Board didn't discuss. Or the whole religious motivation of the Petitioners. The Board found that there wasn't any real connection between the religious – their religious activities and what happened to them. And I think that the record supports that conclusion. The IJ in particular discussed nexus and found nexus to be the central issue in the case, and found that the motivations of the gang members were purely criminal, and criminal motivations don't support the finding of asylum. I think it's also worth pointing out that looking at the testimony, Danny testified – although Danny testified that they showed more interest in our lives after they joined the church, he also testified that he never specifically invited gang members to church and that he pretty much never spoke directly to the gang members. Susie similarly testified that she never spoke directly to any gang member about how they felt about Christianity or how they felt about her activities. Although they testified that the pastor of their church had been punched during one of these outreach activities, there's nothing to suggest in the record that their pastor is being targeted for death or that their pastor is being persecuted separately. And that doesn't necessarily – and even if you were, that wouldn't necessarily mean that laypeople who participate in a church would be similarly persecuted. Simply put, the record supports the conclusion that the agency reached, that the gangs were motivated by criminal intent and not by a protected ground. Unless the Court has further questions. I don't believe that we do. Thank you. Thank you. With respect to Petitioner's religion claim, I think at the very least, this Court should remand this case for the Board to reconsider its finding of nexus. The government's presentation, just like the Board's analysis, was entirely backwards-looking, treating this case like a past persecution case, which it's not. This case is about Petitioner's well-founded fear of future persecution. Dr. Vanden – Okay. Well, if you're going to abandon the point that there's been past persecution, then you're going to have to come up with quite a bit of evidence that the gangs will target them in the future. And if you can't rely on what they've done in the past, what's the evidence that MS-13 is going to look for them in the future? I'm not abandoning what happened in the past as evidence of a well-founded fear. Well, you told us that we needed to remand to the Board on the question of nexus. And if we're remanding to the Board, I'm not sure what the grounds are for remand, but you said this was not a past persecution case, and that's the way that the BIA treated it. Right, because the Board did not discuss whether there is a nexus between a protected ground and Petitioner's well-founded fear of future persecution. Of course, what happened in the past is relevant to that determination. I'm not denying that what happened in the past is relevant. It certainly is relevant. Well, I'm looking at the bottom of the first page of the Board's opinion. The last sentence says, Most of the problems they faced with the gang were due to their refusals to be associated with them. The gang's members attempted to extort money from the family as they were perceived to be wealthy. And they say something similar in the middle of the next page. But what you're asking for seems to me to be contrary to the way the Board decides these cases. Your clients applied for asylum. And the normal way that asylum is analyzed is to say, Have people been persecuted on account of a protected ground? If not, if they failed to satisfy that, then there's no presumption that they will be afraid in the future. And so there has to be an affirmative proof to that effect. And the record would have to compel a finding to that effect for there be a reason to remand. And I just have difficulty seeing why following the normal analytical pattern is erroneous. I see my time is expiring, but if I may just answer your question. Please. The IJ found in this case that petitioners do have a well-founded fear of future persecution at the hands of the MS-13 gang. And so the analytical question in this case is whether that well-founded fear of future persecution, which is independent of a finding of past persecution, is whether that well-founded fear of future persecution is on account of a protected ground. The Board's analysis does not speak to that precise question, and I think there is a question as to whether the Board even considered this as a well-founded fear of future persecution claim. I think the best evidence of that is that it didn't say anything at all about the very powerful testimony of Dr. Vanden about why these petitioners would be targeted in El Salvador if they resume evangelizing. How are we confident that the BIA didn't refer to Dr. Vanden? Because it didn't mention Dr. Vanden by name? They didn't mention Dr. Vanden. Of course, the Board does not need to cite all of the evidence piece by piece in a ruling. But in this case, his testimony was so powerful about why petitioners would be targeted if they returned to El Salvador. And I think the absence of any discussion of his testimony, combined with the absence of any discussion of a well-founded fear of future persecution. Because of their religious activities in the past? Because of their religious activities in the past, and the plentiful evidence that the persecutors were motivated in the past by their religious activities, notably the machete incident and the escalation of threats after they joined King's Castle Church. Thank you, Cassa. We appreciate very much the arguments of both councils. It's been very helpful to the court, and the case is submitted.
judges: SCHROEDER, GRABER, BYBEE